I will address the issues of jurisdiction and control, and my co-counsel will address the issue of estoppel. We'd like to reserve three minutes for rebuttal. Because the trial court did not recognize that the issues of jurisdiction and merits were intertwined, it made two reversible errors. First, it resolved the disputes of fact over Dr. Lopez's status without applying the Rule 56 standard. Roberts. Counsel, as I understand Rule 12 motions going to jurisdiction, the Rule 56 standard does not apply. The Court may weigh evidence and make findings of fact to determine whether there's jurisdiction on a Rule 12 motion. Is there some authority to the contrary? Kiskila. That's right. But when the issues of jurisdiction and merits are intertwined, the Court must apply the Rule 56 standard. Roberts. Why is that? Kiskila. The Rule 56 standard is the standard for summary judgment motions. Roberts. I understand that. But as Judge Kleinfeld indicated, when you're talking about jurisdiction, we have a different rule, do we not, where the district court is, in fact, entitled to weigh evidence in order to determine whether it has jurisdiction. I'm specifically citing Autry v. United States and Rosales v. United States. Why is that? Why are those cases not controlling on this issue? Kiskila. On this case, the most relevant precedent is Lawrence v. Dunbar, in which the government acted within the course and scope of his employment for FTCA liability purposes. And the Court found that the issues of jurisdiction and merits were intertwined. So a defendant can't act within the course and scope of his employment if he's not actually an employee. So this means that the employee or contractor inquiry in this case is a necessary precursor to the scope of employment inquiry in the Lawrence case. Well, you do agree that these are intertwined issues, is that correct, of facts and law? That's right. And you suggest that the case that you cited overrides what I read to you about Autry and Rosales, is that correct? Well... Those cases are pretty clear that these kinds of issues are frequently intertwined issues of law and facts and gives the district judge or whoever the trier of fact is a limited ability to weigh facts in order to determine whether the Court has subject matter jurisdiction. So what I'm asking is, what authority do you have to the effect that these cases don't apply? Specifically here in Rosales, for example, or rather in Autry, we said a district court may hear evidence and make findings of fact necessary to rule on subject matter jurisdiction question prior to trial if the jurisdictional facts are not intertwined with the merits. Now, there's a little bit of that here. Is that the distinction? The distinction is that the Court said when the issues are not intertwined with the merits. I thought intertwined with the merits there meant was there malpractice? Was there medical malpractice? That would be something that under Autry would have to be left for trial. But the question here was not whether there was malpractice. It was whether the government had held the doctor out as a government employee or whether the doctor was in fact a government employee. And that did not go to whether there was medical malpractice. That first issue is the merits, because regardless of what forum decides the case, the plaintiffs can't prevail without proving that Dr. Kirill Lopez was an employee. But that gets to the point, though, as Judge Feinfeld indicated. In this case, it's a question whether the United States has waived its sovereignty. And if it hasn't, then you don't have jurisdiction. And in this case, how would the district court decide a 12B6 motion without considering some of the facts? Are you saying that in this kind of a case, you can't get 12B6 relief or 12B2 or 1? That's right. The appropriate standard is summary judgment because the issues of jurisdiction are intertwined. So basically you can't get summary relief. You've got to go right to summary judgment. That's right. Do you have any authority for that? Lawrence v. Dunbar is the most closely analogous case. That's it? Lawrence is your best case? Probably. Okay. That's an Eleventh Circuit case. Any authority in this circuit? I would cite the language in Augustine and not Terry itself, that this only applies when the issues of jurisdiction and merits are not intertwined. From your perspective, it's a question of what intertwined means then, right? Right. So for example, if we take Carrillo, which I believe is a Ninth Circuit case, a very similar issue about whether a provider was an employee or a contractor was decided on summary judgment. Okay. I think we have your point on that. Do you want to make another point? Yes. Or that's your part of the argument? No. I'm also doing the control part of the argument. Okay. You want to go to that? So the district court dismissed the plaintiff's complaint largely on the basis of the pleadings and the contract. But it did not require a declaration from Dr. Lopez regarding his experience under the contract. And under Narayan, the contract isn't controlling in FTCA malpractice cases because courts must look past the label placed by the parties on the relationship to the reality of the interactions. Whose burden is it to show that relationship and the reality? The plaintiff's. Okay. And what did the plaintiff do in this case, admittedly at the pleading stage, to show that in fact there was control? They cited certain provisions in the contract. But under the summary judgment standard for pro se plaintiffs, the court should have directed the plaintiffs to conduct more discovery to support their position. So if the court had done that, they would have also submitted a declaration from Dr. Lopez regarding his experiences under the contract, and also possibly from the persons most knowledgeable at the VA and at CR Associates  Was Mr. Kiskilas represented by counsel at any point in this proceeding? So what happened was they retained counsel. And one day before the filing deadline was supposed to pass, the counsel submitted a complaint and told the Kiskilas that he would no longer represent them. So from that point on, the Kiskilas proceeded personally. And prepared the complaint. Right, and took no other role in the case. You've got seven minutes and some change left, and you want to save three minutes for rebuttal? I have a question. Please, by all means. It goes to the merits, but I don't know which of the advocates is going to be responsible for it. Would you like to add? I'm really not, I'm somewhat doubtful that we get to this, but I can't get it out of my mind. I don't understand how he could make a medical malpractice case out of this. He goes to the doctor. His blood pressure is a little high. He gets blood pressure medication. That's what they do. That's the standard treatment. I mean, he got the treatment that pretty much every middle-aged man gets when they show up with high blood pressure. And most of them don't get heart attacks, and some of them do. And I can't figure out what the doctor is supposed to do to prevent the heart attack that occurs sometime later. Well, we would argue that this is more of a question for the jury. Oh, I know it comes later. If you succeeded, actually, you wouldn't get a jury, Federal Tort Claims Act. It would sort of be nice, though, when we evaluate the case, to know whether there's really any case or whether we're just playing games. So Mr. Giskiller reported very specific symptoms, including pain in one side of his body, specifically his leg. And the doctor misdiagnosed him with gout and canceled his follow-up visit. The doctor asked a lot about pain. If you say, when I climb up two flights of stairs, I get pain in my chest, or sometimes I get this feeling of heat and pain going down my arm. Pain in a leg? They look for everything but heart. I don't understand. And if the guy is going to get a heart attack, what's the doctor supposed to have told him? God has a heart attack in store for you and there's nothing you can do about it? Or what you can do about it is take some high blood pressure medicine, which he prescribed? What? We would argue that he would have received much better care for his condition if he had not been misdiagnosed with gout. What care? What's the case? I'm sorry, I'm not a medical expert, but perhaps something more than blood pressure medication. For example, monitoring. We know that the VA canceled his follow-up visit, so perhaps if he had been allowed to have that visit they would have seen the warning signs come up. But it's all conjectural. That's right. It's hard to counsel because, as Judge Feinfeld indicated, the symptoms that your client evidenced, at least as indicated in the record, is one that almost every middle-aged man can say at one or more times in his life occur. And most of the time it has absolutely no adverse impact. He's getting to the merits of it, but in effect, where's the malpractice? Even if the guy is a government employee, where's the malpractice? And, indeed, is that something we need to be concerned about in this case? I would say yes, because the pain was severe enough for the doctor to misdiagnose him with gout. Six weeks after going in for pain in his leg, he got a heart attack. And when he went in to the doctor, he had mildly high blood pressure, 146 over 90, non-smoker, light drinker, thin and fit, but high cholesterol, mid-60s. So they give him the blood pressure medicine and they give him a statin for the high cholesterol, which I don't know what else any doctor would have done. I don't know what you mean by monitoring. Every time you go into the doctor, we'll take your blood pressure? I'm sorry, I'm not a medical expert, but they could have been. You don't know what the medical malpractice. Would we just be wasting the court's time by sending it back because there's no case? I would say no, because I think they could have perhaps seen the progression of the disease and the symptoms get more serious if they had continued with his follow-up visit as originally planned. You're down to almost three minutes. You're going to have your co-counsel. Unless you have any questions. Okay, very good. Let's hear from co-counsel here. Mr. Brawner, is that right? Brawner. Brawner. May it please the court, Adam Brawner on behalf of petitioners. The district court erred for two reasons in dismissing petitioner's estoppel claim. First, it ignored the evidence in the record that showed the government affirmatively concealed and misrepresented the employment status of Dr. Lopez. What was the affirmative concealment? It looks to me like they have a guy in a white coat treating patients at the VA hospital, which may make people think he's a VA doctor, but I couldn't see anything else. I couldn't see any signs saying he's a VA doctor, and his card is at best, for your case, ambiguous. On the one hand, his address is the VA hospital. On the other hand, it says he works for this J.R. Associates or whatever it is. I don't see affirmative misrepresentation, like a nurse telling the guy, oh, he's a VA doctor. Your Honor, I agree about the card. It is ambiguous at best. There is evidence in the record, though, of direct affirmative misrepresentation. Let's say that's true, just for purposes of discussion. Well, I think maybe it is true. I think there was a statement by some employee to them that everybody there was a VA employee. Okay. Well, let's assume for purposes of argument and, in fact, from Judge Fletcher's statement, that's true. Doesn't Marley v. United States knock you out on the equitable estoppel argument? No, Your Honor, it doesn't. For one, the main reason is because Marley is distinguishable. It deals with the statute of limitations case. And this is going to the employment independent contractor distinction. And the difference there is, and the court thinks ---- But you're trying to expand the jurisdiction of the courts with your argument, are you not? And then that's specifically what Marley says, is you can't use equitable estoppel for that purpose. I think the court in Marley is forwarding the principle that equitable estoppel is only justified in cases where there's an extreme miscarriage of justice. Okay. Now, as Judge Kleinfeld has articulately indicated, where is the miscarriage of justice here? I mean, this is arguably not even a malpractice case. At worst, it's not a big deal. I mean, it's not like he left a saw in the guy's chest or something like that. You have a standard procedure, didn't really do anything unusual. Where is the miscarriage of justice here that would justify an exception to Marley? Well, leaving the merits of the malpractice to one side. But we can't, if you're saying that it's a miscarriage of justice, can we? Isn't that really what it has to be based on? I think it does. But because there was never a full hearing and because this case was dismissed prematurely, it couldn't be determined at the trial court level whether or not this did rise to the level of medical malpractice. Help me with this, though, counsel. You're saying that we need to expand the jurisdiction of the federal court because if you don't give equitable estoppel, there's a huge miscarriage of justice. But in order to show that there is a miscarriage of justice, you have to go to the merits of the case, don't you? What other miscarriage could you be speaking about? Yes. Certainly it goes to the merits of the case whether there's a miscarriage of justice. Where is the miscarriage if not in the case itself? And it is in the case. And I would respond that it's not an expansion of Where? What else could the doctor have done or would a good doctor have done? I can only expect Keep in mind you're talking to two out of three middle-aged men who maybe know something about this. Thank you for lowering our life expectancy. I'm sure I can only speculate, but I can speculate that maybe an EKG would have been appropriate and that could have caught the But that's total speculation, isn't it? It is. It is. And I think that's the point. Can speculation be a miscarriage of justice? It is because the trial court never addressed that. The trial court never got to the merits. So we at this stage, this court can't determine the merits of the case because there is no full record of the medical malpractice. There's no expert testimony as to what the standard of care is in that instance. And it's just pure speculation. Isn't the elasticity of the law wonderful? At times, yes. At times, yes. Why don't we let you take a seat there? We're going to hear from the government. And because you're student advocates, we're going to give you each a minute and a half or so to respond. Okay? Thank you, Your Honor. Very good. Let's hear from the government. Good morning. If it pleases the Court, I'm Tom Reeve. I represent the United States on behalf of the VA in this case. I have a problem with the word intertwined. I have a problem frequently with metaphors, and I have a problem with that one because it's a metaphor. I'm able to apply a concrete test, like would the Court have to decide the merits case in order to decide jurisdiction. But everything is always intertwined with everything else in a case, and it's hard for me to know when the intertwining is too much if all we do is look for intertwining. Your Honor, there's two cases, if I could come into the Court. One is the Augustine case, which at 704 Fed 2nd at page 1077 discusses when the intertwining affects which standard of decision is used and indicates that the question of jurisdiction, if it's dependent upon the resolution of factual matters going to the merits, is then intertwined. When I asked your adversary, well, why aren't the merits, whether there was medical malpractice, and the question whether the doctor worked for the VA is different. But they said, no, no, no, the VA would not be responsible for the doctor if he didn't work for the VA.  Well, our view is it does not. The question is, is he a Federal employee requires a substantially different body of fact and evidence. The other case, Your Honor, is the Autry case, which I believe you cited, which also uses the term that if the question of jurisdiction is dependent upon the factual issues going to the merits, and in this case it's not. The jurisdictional question has to do with the relationship, if any, between Dr. Lopez, who the appellants have admitted works for CR Associates. Page 1 of the appellant's opening brief indicates that he's an employee of CR Associates. And from that, the United States argues that he's not a Federal employee, that page 1 of their brief acknowledges. I think the term they use is that Dr. Lopez worked for a private company called CR Associates. It's page 7 of 68 under the court's docket numbering system, docket 22. And from that, the question then becomes how do you determine what's dependent or what's not. But the question of Federal employment will look to Federal law. It will look to the relationship between CR Associates and the VA. Typically, the examination is conducted of any contract, if there is one, and also of the conditions of work, the conditions on the site. And in this case, both of those support the position that Dr. Lopez was not a Federal employee. The contract is very specific, starting off with citation to the Federal acquisition regulations. Well, let's assume that that's completely accurate, that he is an employee of this CR group, and that's clear. But the VA employee who's at the desk, the secretary, tells them that every employee there is a VA employee. Now, does that make a difference? Well, were that to have happened, and there's no evidence that it did, I believe there's Well, there is a scintilla of evidence, at least. I believe there's a statement by one or both of the Kiskillas to the effect that they've been told they were VA employees. Yeah. But despite months and months of discovery, at no point was that alleged teller employee revealed. No deposition. Wait. Do you have a statement under oath by Mrs. Kiskilla that an executive secretary told her that all doctors were VA employees? No. But at no point did Mrs. Kiskilla get a declaration from the secretary or ask to take her deposition or in any way provide her to see if that's, in fact, what the secretary said. It would be, were it to be offered at trial, it would be objectionable as hearsay. No, it would be an admission. If it were Rule 56 standard, that would establish a genuine issue of material fact. If the judge can weigh evidence, then without something more, he might weigh it as being not very weighty. Well, Your Honor, if it did establish a question She says under oath, the secretary told me that, and that's the only proof there is. A jury can decide to believe it. So, or prior fact can decide to believe it. So if it's a Rule 56 standard, that's what we have to treat as the fact. If we apply the Rule 56 Augustine, though, addressed that issue by referring to the Supreme Court case of United States versus Kubrick, where the Supreme Court, in a medical malpractice claim, actually dealt with the statute of limitations, but the court specifically allowed the trial judge to investigate whether the factual predicate about what he knew before and high probability and so on to be considered in determining whether there was federal jurisdiction. In short, hasn't Kubrick specifically blessed the very kind of thing that occurred in this case? Admittedly, this is a, you know, whether there's an agency, a control and so on versus a statute of limitations, but it's still a factual predicate. I think it is. I think it's appropriate. But I also think even if the Rule 56 standard were applied, we have to continue the thought under Kokkonen, the burden is on the plaintiffs to prove there is jurisdiction. Even under Rule 56, the United States has put forth a prima facie case admitted to by the appellants that Dr. Lopez was an employee of CR Associates, that he is not within the ambit of 1346 and 2671 of the U.S. Code. He's not a federal employee. Then if there's ambiguity, the ambiguity hurts the appellants who have to overcome the prima facie case. They have the burden to prove there is jurisdiction, and if all they can do is raise it to a level of ambiguity, they have not met their burden to overcome the prima facie case. Our view is that it is under the jurisdictional is not dependent upon the merits, and so they're not intertwined in the sense that you have to go to Rule 56. But even if you go to Rule 56, because the plaintiffs' appellants have the burden to prove there is jurisdiction, as do all plaintiffs in all federal district court cases, we put on the prima facie case which shows that unrebutted, uncontested, he's an employee of CR Associates. And then through the briefing, at best, the appellants can raise a question of ambiguity. That's insufficient to overcome the prima facie, and even under 56, I believe the United States should win. So just to be sure I understand your position, instead of relying on the Augustine approach, you're saying even if because everything is intertwined here, which is of a concern, that if you apply the Rule 56 standards, the government wins because at best there's ambiguity and the plaintiffs don't meet their burden. Is that correct? To get there, though, we do assert that Augustine is the appropriate approach. The district court was correct to weigh and make assessments and that they are not so intertwined. And to those, we would cite Autry and Augustine that the jurisdictional questions, the subject matter jurisdictional question is resolved between different parties. The malpractice case would be resolved between Dr. Lopez, the Koskillas, looking at medical texts, looking at the standard of care, things of that sort. The other issue, whether or not there's an imputed. I think it bothered me a little here. I don't know if it really bears on the outcome or not. I haven't thought through it enough. Obviously, the Koskillas could have solved their problem that they face in court today by suing the doctor. Now, suing the doctor if the doctor is not responsible because he's a government employee is likely to expose a plaintiff at the least to costs and at most to Rule 11 sanctions or in jurisdictions where attorney's fees are awardable, like Alaska that follows the English rule, to attorney's fees. Here, I don't think attorney's fees would be awardable, but certainly costs with a risk of Rule 11 sanctions. By the time they find out and, indeed, by the time the government lawyer finds out that this doctor was not a VA employee, the statute of limitations is run. It's too late to sue the doctor. So they've got the VA or nothing. I just wonder whether there's something wrong with that, and I haven't figured out yet exactly how the law fits onto that wrong, if there is a wrong. I don't believe there is a wrong for two primary reasons. The one primary reason is that it is a very routine matter in district court cases for a government employee and a government agency to be named as a defendant. That happens quite frequently. A Border Patrol agent will be named as well as the United States in an automobile accident. Well, when a doctor is named, the Border Patrol agent being named is usually not a problem, but when a doctor is named, ordinarily he tenders to his malpractice carrier. The malpractice carrier immediately piles five or six figures worth of defense expenses into it, and then they go for Rule 11 sanctions if it turns out that the doctor shouldn't have been named. Your Honor, I'm sorry. I'm speaking from my own experience. Daily, we handle San Diego and Imperial counties, and there's VA facilities and other facilities. When a doctor is served, he typically goes to the house counsel at the facility. And if it's the VA ---- These independent contractors don't tender to their malpractice carriers? Well, the contractor would, but the contractor is not the problem. You're postulating if it were an employee doctor who was sued, he's going to ---- No, I'm ---- I'm sorry. I misunderstood. I'm saying if a doctor and Dr. Kiskila's or the doctor that treated Kiskila is sued, he would ordinarily tender to his malpractice carrier. That's correct. He's not an employee of the government, and he knows he's not an employee of the government. So he goes up his corporate chain. He would turn in, as the contract says, he has to advise the corporate that he's been sued. But if he were or if he thought he were a government employee, he would go to the VA's agency counsel. We would then make a scope decision as to whether he's employed or not. That happens on a daily basis with people driving automobiles. I would guess he doesn't really know, actually, because it's kind of technical. Whether the doctors even read the contract between J.R. Associates and the VA is pretty doubtful. He may not have, but the C.R. Associates did all of his H.R. work, all of his human relations work. They paid him. They did his taxes, his 1099s or 1040s. They didn't do the taxes for him, but they gave him the tax documents. He gave them the W-4s. So he would logically, as an independent contractor employee, talk to his company. He would go to the human resources people most likely. But it's not the decision as to whether someone's a federal employee or not is made very early in most of the litigation. If you sue John Smith and it turns out he's a border patrol agent, we simply remove the case from state court to federal court. We substitute under 28 U.S.C. 2679 the United States in his place. There's not a huge burden on an employee, but the independent contractor would be independent. But the other point, Your Honor, is that the delay, the loss of the opportunity to sue in state court, is entirely a creation and an obligation of the casquillas. They knew that on December 5th, 2005, I think it was, the heart attack occurred. They did not submit their administrative claim to the Navy, to the VA, until more than one year later. It was December 12th of 06 when the admin claim was submitted. That entire year during which they might have brought suit against the private doctor, Dr. Lopez, was all spent by the casquillas, who at that time were represented by counsel, at least at the end of it, because counsel drafted their complaint. Let me ask you a question here. Normally in a 12B1 motion, the allegations of the complaint would be accepted as true. For purposes of determining jurisdiction in a situation like this, where you're asking the district judge to make a finding in effect of some predicate facts, do you treat those allegations as being true? Or do you, as you've intimated, if necessary, you go to the Rule 56 standard, in which case each party has the burden to show you've really gone on a summary judgment basis. Which is it? This is a factual challenge, and because of that, the district judge is correct in balancing the facts, looking and inquiring into what happened. So the presumption of correctness of the complaint is not correct when you're doing that, right? And if so, what's the authority for that? I believe it may also be the Autry case. And I think the Augustine case cites to Thornhill for the proposition that you don't get the presumption of truthfulness in a factual challenge to subject matter jurisdiction that is available in the facial challenges. But I think the timing, the initial claim was that the Kaskillas had lost an opportunity to sue in state court because the VA had been delinquent. But in fact, their claim was submitted after the state court one-year statute had expired. That's right. But had they known that they had to sue the state or the doctor, they would have done it earlier. They didn't have that knowledge. Well, and that's... And they sued in time. Had it been a federal employee, they were timely. Had it been... Yes, ma'am. They had the ability, if for no other reason than the card that said CR Associates. Mrs. Kaskilla went in and got the card from the clinic within days of her husband's heart attack. She could have then or she could have had counsel. At any time in that year, simply call up the doctor and ask him who he worked for and say, Dr. Lopez, are you a VA doctor and which branch of the VA? It appeared that was never done, but that was a path available to them. Any other questions from my colleagues? No. Thank you very much. We're going to give each of these student counsel a minute and a half to rebut here. Thank you, Your Honor. The declaration itself raises issues of fact under the Rule 56 standard. The declaration of Mrs. Kaskilla stating that a secretary told her that everyone at the clinic was a government employee. Now, that's hearsay. That's true, but the government did not... You're going to argue it's an admission against interest. The government did not object to the introduction of this evidence in the declaration, and the court did not explain to the plaintiffs the standards for discovery as required for pro se parties under Rule 56. I am troubled by the fact that she knew that he was a private doctor working for the CR company when she received the card, which was very shortly after the heart attack. My co-counsel will address this issue in more detail, but the record is unclear whether that's actually the card she received and what that card said and whether it was sufficient to overcome all the other information she was receiving to suggest that everyone at the clinic was a government employee. It might have put her on inquiry, at least, to go further as to find out the facts. The record wasn't clear that the card that said CR Associates was even the card she received, and if it had, it just said CR Associates, but it also said director of the VA clinic, so it's not clear that she even understood that to mean that he was working for someone else. Any other questions for my colleague? All right, thank you very much. We'll give your other counsel a minute and a half to rebut. I want you to have a full opportunity here. Thank you, Your Honor. I'd like to start by distinguishing Marley, which is a statute of limitations case. Allowing an estoppel claim in this case would not be an expansion of jurisdiction because this Court has already fully considered an estoppel claim in Carrillo. The statute of limitations cases that the government cites, such as Marley, are distinguishable because courts have consistently cited the statutory clarity of the statute of limitations sections, meaning that somebody who was unaware of the statute of limitations requirements could easily gain that understanding just by looking at the statute. Let me get back to the same problem you talked about before, which is you talk about basically a miscarriage of justice, and I think you said before you agree we have to look at what actually occurred here, and certainly Judge Kleinfeld and I are saying where's the malpractice? Where's the beef? Isn't that what we have to look at? I think no, I don't think so. I think the miscarriage of justice here is, especially in the context of the estoppel claim, is the loss of the state law claim that they would have had. Justice is not the right to bring a lawsuit that you're going to lose. Justice is the right to a remedy that you're going to lose. A lot of us middle-aged men just wake up dead. But then we don't wake up. Despite the best efforts of doctors. I would argue that there's a miscarriage of justice when they're denied their rights and their right to bring a state lawsuit here was denied because of the misconduct of the government, the frequent misrepresentations of Federal employees, the fact that the VA, it was two and a half years or almost two and a half years. I don't know if you understood my question. The miscarriage of justice, justice doesn't mean I could have sued somebody. Justice means I could have been compensated for a wrong done to me. And I think that a precursor to that, to the justice of being compensated for something wrong being done is the ability to bring that suit. They can't be compensated if they were denied the opportunity to prove their case, as it were. And in this case, they were denied that because the statute of limitations ran. I could sue my mother's pediatrician because I'm not taller and more athletic. But that doesn't mean I could win. And so denying me the right to bring that lawsuit wouldn't deny me justice. I think if you had a viable claim, it would deny you justice to bring that lawsuit. Exactly. That's the big if. We thank our student advocates today and their pro bono sponsors. We hope that you have found this an interesting experience. And hopefully you know that part of the whole process here is to make certain that your clients and others have due process. They're given a full hearing. And whatever the results in the case, we thank you for your involvement. And hopefully you've learned from that and government counsel as well.  Thank you, Your Honor. And we will now hear the last argument on the calendar, which is United States v. MAC.
judges: Fletcher, Kleinfeld, Smith